Dear Mr. Picard:
This office is in receipt of your recent opinion request regarding Act1295 of the 1999 Regular Session of the Louisiana Legislature and the application of the Education Excellence Fund ("EEF"). Act 1295 of 1999 can be found at LSA-R.S. 39:98.3 et seq. It was also enacted as an amendment to the Louisiana Constitution and can be found in Article VII, 10.8 of the Constitution of 1974. Specifically, you stated that you had three areas of concern regarding the distribution of the Education Excellence Fund.
Your first area of concern is regarding the treatment of Type 2 charter schools, which are under the jurisdiction of the State Board of Elementary and Secondary Education (BESE), in relation to Type 1, 3 and 4 charter schools, which are under the jurisdiction of the local city and parish school systems. Your question concerns how each type of charter school is to participate in the distribution of EEF money. Charter schools, referred to as independent public schools, are specifically mentioned in LSA-R.S. 39:98.3(C)(3) (also found at Louisiana Constitution Article VII, 10.8).
 Appropriations may be made for independent public schools which have been approved by the State Board of Elementary and Secondary Education or any city, parish, or other local school system, and alternative school and programs which are authorized and approved by the State Board of Elementary and Secondary Education and are not subject to the jurisdiction and management of any city, parish, or local school systems to provide for an allocation for each pupil, which shall be the average statewide per pupil amount provided in each city, parish or local school system pursuant to Paragraphs (4) and (5) of this Subsection. (Emphasis supplied).
LSA-R.S. 1:3 states, in part, that:
 The word "shall" is mandatory and the word "may" is permissive.
LSA-R.S. 39:98.3(C)(3), refers to independent public schools which are authorized and approved by BESE (Type 2) or any city, parish or other local school system. (Type 1, 3 and 4). This statute references the charter schools that are authorized by the Charter School Demonstration Program Law pursuant to LSA-R.S. 17:3971 et seq.
LSA-R.S. 39:98.3(C)(3) delineates how independent public schools would receive EEF money through appropriation. This provision of the law specifically states that independent public schools may receive an appropriation; therefore an appropriation of funds to independent public schools is not required under the law or constitution. It is purely discretionary.
Type 1, 3, and 4 charter schools may also receive EEF money under LSA-R.S. 39:98.3(C)(4)(a) and (b) (Louisiana Constitution Article VII,10.8(C)(3)(d)(i) and (ii)). This provision of the law mandates an appropriation of EEF money to local school systems from whom Type 1, 3 and 4 charter schools are funded. The local school systems, however, are not required by the law or constitution to distribute EEF money to any particular school, including charter schools, within their system. Type 2 charter schools are not included in this mandatory appropriation as they are funded through BESE.
Under your first area of concern, you also questioned whether LSA-R.S.17:3995(C) has any effect on the distribution of EEF money. LSA-R.S.17:3995(C) states:
 Any approved charter school shall be eligible for any other federal, restricted state, and unrestricted state funding for which the school or its pupils qualify . . .
This statute would not have any effect on the distribution of EEF. Charter schools are eligible to receive an appropriation, however as noted above, an appropriation is not required by the law or constitution. Because no appropriation was made to the entities under LSA-R.S. 39:98.3(C)(3) by the legislature in the 2000-2001 fiscal year budget, Type 2 charter schools will not receive EEF money this fiscal year. (See Louisiana Constitution Article VII, 10(D) and Attorney General Opinion Number 80-1490).
Your second area of concern deals with the distribution of EEF money once the Department of Education and the appropriate standing committee of the legislature has approved the local school system's plan as mandated by LSA-R.S. 39:98.3(C)(7) (Louisiana Constitution Article VII,10.8(C)(3)(g)). You questioned whether the distribution of funds on a lump sum basis rather than a reimbursement basis was a "violation of the constitutional prohibition against the advancing of public funds."
We are not aware of a "prohibition against the advancing of public funds" in the Louisiana Constitution of 1974. There is, however, a constitutional prohibition against donations, loans, and pledges of public credit to any person, association, or corporation, public or private.
Constitutional Article VII, 14(A) states:
 Section 14.(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or thing of value of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
This provision of the law deals with the donation of public funds, not the distribution of public funds pursuant to an appropriation. Further, the first sentence of Louisiana Constitution Art. VII, 14 states, "[E]xcept as otherwise provided by the constitution." As stated earlier in this opinion, Act 1295 of 1999 was also enacted at Article VII, 10.8 of the Constitution of 1974. Therefore, Article VII, 10.8 constitutes an exception to Article VII, 14, even if the latter is applicable, which is not conceded.
The EEF statute and constitutional provision mandates how money shall be appropriated to the local school systems. The money is only placed in the budget of the Department of Education to distribute to the local school systems. LSA-R.S. 39:98.3(C)(7) (Louisiana Constitution ArticleVII, 10.8(C)(3)(g)) mandates that "(N)o funds may be distributed to any school or school system until its plan has received both legislative and departmental approval as provided by law." After approval, neither the statute nor constitution requires any particular method of distribution. In the absence of any such requirement, the method of distribution is within the sound discretion of the Department of Education.
Your third area of concern deals with the definition of "supplant" as used in LSA-R.S. 39:98.3(C)(8) (Louisiana Constitution Art. VII,10.8(C)(3)(h)). You stated that you needed "clarification on the meaning of supplanting in the legislation; as this definition conflicts with the Federal definition of supplanting." You then cited the Office of Management and Budget Circular A-133 Compliance Supplement, which states:
 Level of Effort — Supplement Not Supplant
(SEAs/LEAs)
 An SEA and LEA may use program funds only to supplement and, to the extent practical, increase the level of funds that would, in the absence of the Federal funds, be made available from non-Federal sources for the education of participating students. In no case may an LEA use Federal program funds to supplant funds from non-Federal sources. . . . In the following instances, it is presumed that supplanting has occurred:
 The SEA or LEA used Federal funds (except Bilingual) to provide services that the SEA or LEA was required to make available under other Federal laws or State or local laws.
 The SEA or LEA used Federal funds to provide services that the SEA or LEA provided with non-Federal funds in the prior year.
 The SEA or LEA used Title I, Part A or MEP funds to provide services for participating children that the SEA or LEA provided with non-Federal funds for nonparticipating children. (Emphasis supplied)
As noted above, this regulation specifically references the use of federal funds by the state or Local Educational agency.
LSA-R.S. 98.3(C)(8) states:
 No amount appropriated as required in this Paragraph shall displace, replace, supplant appropriations from the general fund for elementary and secondary education, including implementing the Minimum Foundation Program. This Paragraph shall mean that no appropriation for any fiscal year from the Education Excellence Fund shall be made for any purpose for which a general fund appropriation was made the previous year unless the total appropriations for the fiscal year from the state general fund for such purpose exceeds general fund appropriations of the previous year. Nor shall any money allocated to a city or parish school board pursuant to this Section displace, replace or supplant locally generated revenue, meaning that no allocation to any city or parish school board from the investment earnings attributable to the Education Excellence Fund shall be expended for any purpose for which a local revenue source was expended the previous fiscal year unless the total of the local revenue amount expended that fiscal year exceeds the total of such local revenue amounts for the previous year. (Emphasis supplied).
Louisiana Civil Code Article 9 states that:
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
Firefighters' Retirement System v. Laudrieu, 572 So.2d 1175 (La.App. 1st Cir. 1990), citing Bunch v. Town of St. Francisville, 446 So.2d 1357
(La.App. 1st Cir. 1984), set forth the general rule for the interpretation of laws. Bunch at 1360 holds:
 When interpreting a law (ordinance), the court shall give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject.
LSA-R.S. 39:98.3(C)(8) clearly defines what "supplant" shall mean for the purposes of EEF. (See emphasized area above). The definition supplied by the Office of Management and Budget governs the use of federal funds by State or Local Educational Agency. Because this is a state statute, which is mandating the implementation and distribution of state funds, the state definition given in the statute would control.
In conclusion, appropriations from the Education Excellence Fund should be implemented as delineated in the statute and in the constitution. First, because of the permissive language "may," charter schools are not mandated to receive an appropriation of EEF money through LSA-R.S.39:98.3(C)(3). All charter schools may receive EEF through LSA-R.S. 39.98.3(C)(3) (Louisiana Constitution Art. VII, 10.3(C)(3)), but only if specifically appropriated for a particular fiscal year. Additionally, Type 1, 3 and 4 charter schools may receive EEF funds through their local school systems under LSA-R.S. 39:98.3(C)(4)(a) and (b) (Louisiana Constitution Art. VII, 10.8(C)(3)(d)(i) and (ii)). However, the local city and parish school systems are not required by the law or constitution to distribute EEF money to any particular school, including charter schools, within their supervision and control. Secondly, LSA-R.S. 39:98.3(C)(7) does not violate any constitutional prohibition regarding the distribution of funds, because the Department of Education will be distributing an appropriation, not donating funds. Lastly, because LSA-R.S. 39:98.3(C)(8) is a state statute which mandates the implementation and distribution of state funds, the definition of supplanting given in the statute would control.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _______________________________ Veronica L. Howard Assistant Attorney General
RPI:VLH:lrs